UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL JOHN DENHAM,<br><br>       Plaintiff,<br><br>  v.<br><br>S. SHERMAN, et al.,<br><br>       Defendants. | Case No. 1:20-cv-01645-ADA-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. 23)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>(Doc. 53)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>(Doc. 44) |

## I.  RELEVANT PROCEDURAL BACKGROUND

On June 24, 2022, Defendants filed a Motion to Dismiss Plaintiff's Fourteenth Amendment Claim, Conspiracy to Violate Civil Rights Claim, and State-Law Negligence Claim in the First Amended Complaint. (Doc. 23.)

On July 7, 2022, Plaintiff filed a motion to stay Defendants' motion to dismiss until the Court had completed screening of his first amended complaint. (Doc. 24.)

On July 13, 2022, the Court issued its Order Denying Plaintiff's Motion to Stay and Order Directing Plaintiff to File Response to Defendants' Motion to Dismiss, or, in the Alternative, to

1  File a Second Amended Complaint. (Doc. 25.)

2  On July 21, 2022, the Court granted Plaintiff's request for a 90-day extension of time

3  within which to file a response to the motion to dismiss. (Doc. 27.)

4  On October 19, 2022, the Court granted Plaintiff's second request for a 90-day extension

5  of time within which to respond to Defendants' motion to dismiss. (Doc. 32.)

6  On January 17, 2023, the Court granted Plaintiff's third request for a 90-day extension of

7  time within which to respond to Defendants' motion to dismiss. (Doc. 36.)

8  On April 14, 2023, the Court issued its Order Granting in Part Plaintiff's Fourth Request

9  for an Extension of Time to Oppose Defendants' Motion to Dismiss. (Doc. 46.) Plaintiff was

10  ordered to file a response to Defendants' motion to dismiss by June 1, 2023, and was warned

11  further requests for an extension of time would be disfavored. (*Id*.)

12  On May 3, 2023, Plaintiff filed a Motion for Leave to File a Second Amended Complaint

13  and concurrently lodged the second amended complaint with the Court. (Docs. 51, 52, 53.)

14  On May 22, 2023, Plaintiff filed a request for a 30-day extension of time to file his

15  opposition to Defendants' motion to dismiss. (Doc. 55.) The Court denied Plaintiff's request in its

16  order issued May 23, 2023. (Doc. 56.) Plaintiff was ordered to file an opposition no later than

17  June 1, 2023, as previously ordered. (*Id*.)

18  On May 24, 2023, Defendants filed an opposition to Plaintiff's motion to file a second

19  amended complaint. (Doc. 57.)

20  On June 1, 2023, Plaintiff filed an opposition to the motion to dismiss (Doc. 58) and a

21  request for judicial notice (Doc. 59).

22  On June 7, 2023, Plaintiff filed a reply to Defendants' opposition to his motion to file a

23  second amended complaint. (Doc. 61.)

24  **II.  APPLICABLE LEGAL STANDARDS**

25  **A.  Motions to Dismiss**

26  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro*

27  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a Rule 12(b)(6) motion, the Court's

28  review is generally limited to the "allegations contained in the pleadings, exhibits attached to the

1   complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine*

2   *Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks and citations omitted).

3   Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient

4   facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

5   699 (9th Cir. 1988) (citation omitted).

6       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

7   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

8   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court

9   "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

10   most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

11   (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners

12   liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

13   2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's

14   factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). A

15   court's liberal interpretation of a pro se complaint, however, may not supply essential elements of

16   the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

17   1982); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

18                   **B.  Conspiracy Claims**

19       Section 1985 proscribes conspiracies to interfere with certain civil rights. A section 1985

20   claim "must allege facts to support the allegation that defendants conspired together. A mere

21   allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. Los Angeles*

22   *Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A conspiracy occurs only when the parties have

23   reached "a unity of purpose or a common design and understanding, or a meeting of minds in an

24   unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946).

25                   **C.  Presentation of a State Law Claim**

26       The California Government Claims Act (Gov. Code, § 810 et seq.), formerly known as the

27   Tort Claims Act, governs actions against public entities and public employees. Under the

28   Government Claims Act, no person may sue a public entity or public employee for "money or

3

1   damages" unless a timely written claim has been presented to and denied by the public entity.

2   Cal. Gov't Code § 945.4; *Curtis T. v. County of Los Angeles*, 123 Cal.App.4th 1405, 1415 (2004).

3   A claim pertaining to a cause of action for personal injury must be filed within six months after

4   the cause of action accrues. *Id.*, § 911.2; *Curtis T.*, 123 Cal.App.4th at 1415. With certain

5   exceptions, an action against a public entity on a cause of action for which a claim must be

6   presented must be commenced "not later than six months" after written notice rejecting the claim

7   is delivered to the claimant personally or deposited in the mail. Cal. Gov't Code § 945.6. The

8   claimant is charged with knowledge of the six-month period and is obligated to inquire as to the

9   status of the claim if he or she has not received a written rejection notice within a reasonable time

10  after the public entity's time to act or reject the claim has passed. *Id.*

11          **III.    PRELIMINARY MATTERS**

12                  **A. Defendants' Request for Judicial Notice**

13          Defendants request the Court take judicial notice of seven documents pursuant to the

14  Federal Rules of Evidence. (Doc. 23 at 12-13.) Alternatively, they ask the Court to review the

15  documents pursuant to the incorporation by reference doctrine. (*Id.* at 14.)

16          First, Defendants ask the Court to take judicial notice of inmate grievance or appeal log

17  number SATF-E-19-01152, referenced by Plaintiff in his first amended complaint. (Doc. 23 at 12,

18  Ex. A at 19-39.) The second document concerns Government Claim No. 19005864, referenced by

19  Plaintiff in his first amended complaint. (*Id.*, Ex. B at 40-96.) The third document is the rejection

20  letter concerning that claim. (*Id.*, Ex. C at 97-100.) Fourth, Defendants ask the Court to take

21  judicial notice of the director's level denial of grievance or appeal log number SATF-E-19-01152.

22  (*Id.*, Ex. D at 101-104.) The fifth document concerns grievance or appeal log numbers SATF-E-

23  19-05608. (*Id.* at 12-13, Ex. E at 105-153.) The sixth document concerns the director's level

24  denial of grievance or appeal log number SATF-E-19-05608. (*Id.* at 13, Ex. F at 154-156.)

25  Finally, the seventh document concerns Plaintiff's complaint filed in the Sacramento County

26  Superior Court on August 21, 2020, assigned case number 34-2020-00285407. (*Id.*, Ex. G at 157-

27  181.)

28  //

1    With two exceptions, "'a district court may not consider any material beyond the

2    pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688

3    (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).  "First, a court may

4    consider 'material which is properly submitted as part of the complaint' on a motion to dismiss

5    without converting the motion to dismiss into a motion for summary judgment."  *Id.*  "Second,

6    under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'"  *Id.* at

7    688-89 (citation omitted).  Under this second exception, courts considering a Rule 12(b)(6)

8    motion to dismiss a 1983 claim have taken judicial notice of certain CDCR records.  *E.g.*, *Allen v.

9    Virga*, 2013 WL 2665395, at *2 & n.2 (E.D. Cal. June 12, 2013) (judicial notice of plaintiff's

10   CDCR movement history).

11   While a court make take judicial notice of undisputed matters of public record, it may not

12   take judicial "of *disputed* facts stated in public records."  *Lee*, 250 F.3d at 690 (emphasis in

13   original).  Likewise, "when a court takes judicial notice of another court's opinion, it may do so

14   'not for the truth of the facts recited therein, but for the existence of the opinion, which is not

15   subject to reasonable dispute over its authenticity.'"  *Id.* (quoting *Southern Cross Overseas*

16   *Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3rd Cir.1999)).

17                           **B.  Plaintiff's Request for Judicial Notice**

18   Plaintiff requests the Court take judicial notice of five documents filed in this Court's case

19   number 1:19-cv-01176-DAD-GSA (PC) entitled *Paul John Denham v. Stu Sherman*, et al. (Doc.

20   59.) Specifically, the complaint filed August 29, 2019, the first amended complaint filed

21   November 18, 2019, the screening order issued September 30, 2020, the notice of voluntary

22   dismissal filed September 28, 2020, and the Court's order re dismissal signed September 30,

23   2020. (*Id.*, Exs. A-E.)

24   With the aforementioned authority noted above, the Court grants Plaintiff's request for

25   judicial notice. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take

26   judicial notice of its own records in other cases"). More particularly, the Court takes judicial

27   notice of the fact of these filings.

28

1          IV.    PLAINTIFF'S FIRST AMENDED COMPLAINT

2                 Plaintiff's first amended complaint names the following individuals, all employed at the

3     Substance Abuse Treatment Facility ("SATF") as defendants:

4                 Stuart Sherman, Warden

5                 William Elszy, Supervising Cook

6                 Theresa Cisneros, Chief Deputy Warden

7                 Jason Collins, Associate Warden

8                 Tony Brasil, Correctional Plant Supervisor

9                 Richard Milam, Supervisor of Building Trades

10                Orlando Ronquillo, Correctional Construction Worker

11                Donald Perkins, Correctional Food Manager II

12                Ms. Cooper, Correctional Cook

13                Michael Davis, Correctional Construction Worker

14                Daren Martin, Correctional Construction Worker

15                Bernard Maltman, Correctional Construction Worker

16    (Doc. 21 at 1, 3-4.) By way of relief, Plaintiff seeks compensatory and punitive damages

17    according to proof, prejudgment interest on all damages, an award of attorneys' fees,[1] costs of

18    suit, and any other further relief deemed just and proper. (*Id*. at 17-18.)

19                      **A.  The Factual Allegations**[2]

20                Plaintiff alleges he was housed in Facility E at SATF. That facility contains a kitchen and

21    dining hall where Plaintiff's meals were prepared, delivered and consumed. Plaintiff contends the

22    conditions of his confinement violate the Eighth Amendment because the condition of the dining

23    hall is unreasonable and presents a significant risk of harm to his health and safety.

24                Plaintiff contends the dining hall roof was not completely protected from water intrusion

25    during periods of rain or when liquids were on the roof. Water entered the dining hall roof when it

26

27    ---
      [1] Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

28    [2] Plaintiff's factual allegations appear at pages 5 through 14 of his first amended complaint.

6

rained and did so "[u]ntil 2020 it had done so for the past five years." Plaintiff alleges the damage inside the dining hall was extensive. Plaintiff alleges that damage includes saturated ceiling tiles, broken ceiling tiles, falling ceiling tiles and/or parts of tiles, corrosion of the metal suspended ceiling tile grid/fasteners, and deterioration of fireproof material.

Plaintiff maintains the water leaking into the Facility E dining hall is mixed with harmful contaminants present on the roof and in the building structure. The water dripped onto Plaintiff and his food and drinks. That water was a "murky brown color containing various clumpy substances, including animal feces, insects, feathers, and toxic building materials." Plaintiff asserts the animal feces contain diseases such as norovirus, colitis, and E. coli, and are harmful if consumed and can cause death.

Plaintiff alleges he used the dining hall facility twice a day, consuming his meals there during periods of rain. At that time, substances fell from the dining hall roof into his food and drinks. Plaintiff contends those substances caused inmate Alezander Delgado to be hospitalized for an E. coli infection on December 5, 2018, and that on April 16, 2019, inmate Kevin Fisher was hospitalized with an E. coli infection. Both Delgado and Fisher had recently eaten meals inside the dining hall during rain. Plaintiff maintains it is "a life necessity" that his meals are prepared, served and consumed in sanitary conditions, free from contamination.

The dining hall leaks create paths of transmission for harmful pathogens. Daily exposure to the Facility E dining hall, to contaminated water, mold, feces, and building chemicals, has exposed Plaintiff to substantial risk of illness.

Plaintiff alleges dripping rainwater became trapped in overhead light fixtures, becoming stagnant, before falling onto inmates, drenching them and contaminating their meals. Plaintiff states when he learned his food and drinks had become contaminated, he "forewent consuming such."

Plaintiff maintains the dining hall roof leaks in about fifty different areas, making it impossible for him to avoid coming into contact with the dripping substances, either directly or via splashes. He contends every time it rained, liquid would fall onto him and his meals and drinks. It frequently dripped into his eyes causing pain, irritation and blurry vision. It also dripped

7

onto his skin causing a painful rash. When the ceiling tiles became wet, Plaintiff alleges "their integral strength was compromised; instead of remaining rigid and flat, they softened causing the tiles, or parts thereof, to collapse and fall."

When the tiles fell, Plaintiff contends the injuries caused by the falling tiles include breaking the skin causing bleeding on the head, hands, shoulders and nose, causing fractures to skull, harms, shoulders and hands, and striking skull causing loss of consciousness and death.

Plaintiff contends the risk increased when it rained since the ceiling tiles became saturated and heavier. Plaintiff alleges he observed hundreds of pieces of ceiling tile on the dining hall floor on rainy days.

Moreover, Plaintiff maintains the disintegration of the ceiling tiles and fireproof material posed unreasonable hazards to him. The lack of complete ceiling coverage created large spaces for various debris to fall, and spiders, maggots, and roaches frequently fell onto tables where he and other inmates consumed their meals.

Plaintiff alleges he was terrified to walk inside the dining hall and consume his meals, aware ceiling tiles or parts of ceiling tiles could fall at any time, as could insects and other harmful substances. He states his fear was magnified during and after periods of rain.

Plaintiff contends Defendants Sherman, Elszy, Perkins, Collins, Cisneros, Cooper, Brasil, Ronquillo, Davis, Martin, Maltman and Milam all had a duty to ensure he was provided sanitary food and conditions in a safe environment, yet each deliberately failed to do so. The conditions of the dining hall were unsafe and the named defendants violated contemporary standards of decency by exposing Plaintiff to the risks associated with consuming his food and drinks inside the dining hall. Plaintiff states he is informed and alleges that Defendants Sherman, Elszy, Perkins, Collins, Cisneros, Cooper, Brasil, Milam, Davis, Ronquillo, Martin, and Maltman were aware of the conditions of the dining hall and the health and safety risks posed by eating in the dining hall.

Specifically, Plaintiff contends (1) all defendants personally observed the damage as described, during and after periods of rain, leaking contaminated water into the dining hall areas where Plaintiff walked and consumed his meals, and fallen/hanging ceiling tiles in those areas;

8

(2) all defendants personally inspected the dining hall roof, or reviewed inspection reports, and were made aware that the roof membrane was beyond repair and no longer prevented water intrusion; (3) Defendants Sherman, Collins, Cisneros, Elszy, Perkins and Cooper personally made sanitation inspections of the dining hall, or reviewed inspection reports, and were made aware that water dripping from the dining hall roof was contaminated with harmful substances and animal feces, bird feathers, insects and building substances, (4) all defendants personally made dining hall ceiling inspections or reviewed inspection reports, and were made aware that ceiling tiles saturate leaking rain water, deteriorate, then fall into the areas where inmates walked and ate, exposing them to substantial risk of injury; (5) Defendants Sherman, Collins, Cisneros, Elszy, Perkins, and Cooper personally made dining hall celling inspections or reviewed inspection reports, and were made aware that the missing or damaged ceiling tiles provided an entry point for substances harmful to human health and that inmates were exposed to substantial risk of food contamination, and (6) Defendants Sherman, Collins and Cisneros personally reviewed incident and medical reports, and were made aware that inmates became hospitalized after eating in the dining hall and getting infected with food poisoning, such as E. coli.

Next, Plaintiff contends that when he was personally informed by Defendants Sherman, Collins, Cisneros, Brasil, and Milam about the condition of the dining hall roof leaks and the risk to his health and safety, these defendants "did little, or nothing to ameliorate or abate the risks of injury." None addressed the risk of falling ceiling tiles or contaminated rainwater.

Plaintiff alleges that on January 29, 2019, Defendant Milam informed him that "'due to staffing and budget issues plan operations cannot keep up with the work orders submitted for leaking roofs. Most of these repairs are time consuming due to the severe damages.'"

Plaintiff contends that on March 7, 2019, Defendants Milam and Collins falsely informed him that the dining hall is "'a safe place to collect and eat" his meals because repairs had been performed on February 15, 2019. Plaintiff maintains their "deliberate falsehood was immediately apparent" because it rained on February 28, March 2 and March 5, 2019, and rain leaked into the dining hall in different areas damaging 192 ceiling tiles. Many of the tiles fell into the area where Plaintiff walks and eats his meals. Plaintiff contends both Milam and Collins were aware of the

1   damage before March 7, 2019.

2        On March 19, 2019, Plaintiff informed Defendants Cisneros, Brasil and Sherman about

3   the false claims by Milam and Collins that the dining hall was safe, noting the rain damage and

4   fallen ceiling tiles after the February 15, 2019 repair.

5        On April 30, 2019, Defendant Brasil informed Plaintiff that he was aware of the mildew in

6   the dining hall and that SATF staff had classified the roof as being in a state of disrepair that did

7   not allow for prevention of water intrusion until the entire roof could be replaced. Plaintiff

8   contends Brasil noted that Defendants Milam, Ronquillo, Davis, Martin, and Maltman were all

9   aware of the roof condition.

10       Despite Plaintiff's notice to Defendants Brasil, Cisneros and Sherman on March 19, 2019,

11   and Defendant Brasil's knowledge of the dining hall roof, "these defendants responded on May

12   13, 2019 that 'repairs were addressed at the First level of Review' on March 7, 2019 by

13   Defendants Milam and Collins."

14       Plaintiff maintains Defendant Milam knew his March 7, 2019 statement that the dining

15   hall was safe to collect and consume meals was false. Further, he alleges that on October 8 and

16   November 12, 2019, Milam informed Plaintiff that the dining hall roof did not prevent water

17   intrusion because the roof membrane could not be repaired, and a new roof was required "which

18   will take more than a year." Plaintiff maintains Milam acknowledged that he, Brasil, Ronquillo,

19   Davis, Martin and Maltman were aware that the new ceiling tiles installed in the dining room

20   absorb moisture then fall where inmates walk and eat. Milam stated that no other ceiling tiles

21   were being made available.

22       On January 21, 2020, Defendants Sherman and Cisneros noted that "'the roof membrane

23   replacement'" would be scheduled at an unknown time but declined Plaintiff's request to stop

24   installing absorbent ceiling tiles. Plaintiff contends he warned "that 'the next rainfall will cause

25   these tiles to deteriorate and fall into areas where prisoners walk + eat.'"

26       Plaintiff alleges that Defendants Brasil, Ronquillo, Davis, Martin, Maltman and Milam

27   were aware that they could not install absorbent ceiling tiles in the dining hall until after the roof

28   was replaced because replacement tiles would become rain damaged and fall. But despite that

knowledge, these defendants installed absorbent ceiling tiles prior to roof replacement.

Plaintiff alleges Defendants Sherman, Collins, Cisneros, Elszy, Perkins and Cooper could have immediately ceased using the dining hall to feed Plaintiff and alternatively fed him in his cell or at another location. He maintains SATF officials have previously fed prisoners in their cells and could do so consistent with established safety and security.

Plaintiff contends he asked Defendants Sherman, Collins, Milam, Cisneros, and Brasil to provide his meals elsewhere to avoid exposure to risk of harm, and that "these defendants had a duty and ability to order, or recommend to order," that Plaintiff consume his meals elsewhere. Defendants Sherman, Collins, Elszy, Perkins and Cooper deliberately disregarded the risk to Plaintiff's personal safety by taking no action to prevent the use of the dining hall to feed Plaintiff until the roof was repaired.

Next, Plaintiff contends he is informed and alleges that Defendants Sherman, Collins, Cisneros, Brasil and Milam hired the construction workers that performed the dining hall ceiling tile replacement work, roof repairs and/or inspections. Plaintiff alleges the construction workers performed substandard work using substandard materials. He further allegations these defendants knew or should have known that the construction workers performed substandard work using substandard materials. The substandard work and materials caused Plaintiff harm and Defendants Sherman, Collins, Cisneros, Milam and Brasil's "hiring, supervision, or retention was a substantial factor in causing" Plaintiff's harm.

Plaintiff asserts he filed two inmate grievances regarding these matters: Log numbers SATF-E-19-01152 and SATF-E-19-05608. Both were denied on the merits at the Director's level of review. Further, Plaintiff contends he filed a timely claim with the California Victim's Compensation and Government Claim Board, number 19005864. It, too, was denied on the merits.

### B.  The Causes of Action

In his first claim for relief, Plaintiff contends that by engaging in the conduct alleged above, Defendants Sherman, Elszy, Perkins, Collins, Cisneros, Cooper, Brail, Ronquillo, Davis, Martin, Maltman and Milam violated "his rights under the Fourteenth and Eighth Amendments of

1   the United States Constitution and under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, in

2   that each and in conspiracy with the other subjected" him to cruel and unusual punishment. (Doc.

3   21 at 14.) As a direct and proximate result of their conduct, Plaintiff suffered harm, including

4   emotional injury. (*Id*. at 14-15.) He seeks money damages in an amount to be proven at trial. (*Id*.

5   at 15.)

6      In his second claim for relief, Plaintiff contends that by engaging in the conduct alleged,

7   Defendants Sherman, Elszy, Perkins, Collins, Cisneros, Cooper, Brasil, Ronquillo, Davis, Martin,

8   Maltman and Milam have violated his "constitutional and civil rights and in particular his rights

9   under the Fourteenth and Eighth Amendments of the United States Constitution and under the

10  Civil Rights Act, 42 U.S.C. § 1983, in that knowingly, willfully, and deliberately, or in reckless

11  disregard of" his safety and welfare, they were recklessly indifferent to his safety and welfare and

12  exposed him to excessive risk to his health and safety. (Doc. 21 at 15.) Plaintiff suffered cruel and

13  unusual punishment, and as a direct result, suffered physical and emotional injury. (*Id*.) He seeks

14  money damages in an amount to be proven at trial. (*Id*.) He further contends these defendants

15  acted with malice and oppression, entitling him to exemplary and punitive damages. (*Id*. at 15-

16  16.)

17     In his third claim for relief, Plaintiff asserts that by engaging in the conduct alleged,

18  Defendants Sherman, Elszy, Perkins, Collins, Cisneros, Cooper, Brasil, Ronquillo, Davis, Martin,

19  Maltman and Milam violated his constitutional rights under the "Fourteenth and Eighth

20  Amendments of the United States Constitution and under the Civil Rights Act, 42 U.S.C. § 1986,

21  in that knowingly, willfully and deliberately, or in reckless disregard of" his safety and welfare,

22  they "had the power to prevent, or aid in the preventing, the conduct alleged but neglected, or

23  refused, to do so, and were recklessly indifferent to" Plaintiff's safety and welfare, exposing him

24  to excessive risk to his health and safety. (Doc. 21 at 16.) Plaintiff suffered cruel and unusual

25  punishment, and as a direct result of defendants' conduct, suffered physical and emotional harm.

26  (*Id*.) He seeks compensatory and punitive damages. (*Id.* at 16-17.)

27     Finally, in his fourth claim[3] for relief, Plaintiff contends Defendants Sherman, Collins,

28  _____

[3] Plaintiff has misnumbered the causes of action. (*See* Doc. 21 at 16-17 ["Third Claim for Relief"

1   Cisneros, Brasil, and Milam violated his "constitutional and civil rights under California state

2   law, in that they were negligent by hiring, supervising, and retaining workers that performed

3   substandard work using substandard materials, and that these defendants knew, or should have

4   known, such substandard work using substandard materials created a substantial risk" to Plaintiff,

5   exposing him to excessive risk to his health and safety. (Doc. 21 at 17.) He suffered cruel and

6   unusual punishment and physical and emotional injury. (*Id*.) Plaintiff seeks compensatory and

7   punitive damages. (*Id*.)

8           **V.      DISCUSSION**

9           Defendants allege Plaintiff is impermissibly attempting to "double up" his claims under

10   the Fourteenth Amendment, has failed to allege a "meeting of the minds" as concerns his

11   conspiracy claim, and failed to file his complaint within six months of the rejection of his

12   government tort claim. (Doc. 23 at 14-18.)

13           **A.  Fourteenth Amendment**

14           Defendants argue Plaintiff has alleged his Fourteenth Amendment rights were violated,

15   but that he has failed to make any specific allegations concerning a violation of his due process or

16   equal protection rights. (Doc. 23 at 14.) Because the Fourteenth Amendment affords no greater

17   protection than the Eighth Amendment, they argue the claim should be dismissed without leave to

18   amend. (*Id*.)

19           Plaintiff opposes, arguing Defendants have misinterpreted his pleading. (Doc. 58 at 2.) He

20   states he is not presenting a Fourteenth Amendment claim; rather, he intended his Eighth

21   Amendment claim to apply "to state Defendants through the Fourteenth Amendment." (*Id*.)

22   Further, Plaintiff states his proposed second amended complaint omits reference to the Fourteenth

23   Amendment "to prevent confusion upon the Defendants." (*Id*.)

24           "'[W]here a particular Amendment provides an explicit textual source of constitutional

25   protection against a particular sort of government behavior, that Amendment, not the more

26   generalized notion of substantive due process, must be the guide for analyzing these claims.'"

27   _____

28   followed immediately by "Fifth Claim for Relief"]); there are a total of four claims.

13

1  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S.

2  266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Eighth Amendment supplies

3  an explicit textual source of constitutional protection when an inmate is denied the right to be free

4  from a knowing and intentional disregard of his safety. Therefore, the Eighth Amendment's Cruel

5  and Unusual Punishment Clause, and not the more general Fourteenth Amendment Due Process

6  Clause, governs the constitutionality of defendants' actions. *See Ramirez v. Groh*, 298 F.3d 1022,

7  1029 (9th Cir. 2002) ("the Supreme Court has held that plaintiffs cannot 'double up'

8  constitutional claims in this way").

9       In its First Screening Order, the Court construed Plaintiff's complaint to assert an Eighth

10  Amendment deliberate indifference claim, an Eighth Amendment conspiracy claim and a state

11  law negligence claim. (Doc. 8 at 3-8.) Because the Court found Plaintiff had failed to state a

12  claim upon which relief could be granted, Plaintiff was granted leave to cure the deficiencies in a

13  first amended complaint. (*Id*. at 8-9.) Plaintiff filed a first amended complaint on June 10, 2022.

14  (Doc. 21.) As discussed above, it presents four[4] causes of action. (*Id*. at 14-17.) While Plaintiff's

15  first amended complaint does refer to the Fourteenth Amendment, Plaintiff's opposing

16  explanation is well taken. The Court does not read or interpret the first amended complaint to

17  assert a separate claim concerning a violation of the Fourteenth Amendment. Further, a review of

18  the lodged second amended complaint reveals Plaintiff's assertion to be accurate—he does not

19  allege a separate claim arising under the Fourteenth Amendment and his Eighth Amendment

20  claims similarly make no mention of the former. (*See* Doc. 51 at 16-19.)

21       Because Plaintiff did not separately assert a claim arising under the Fourteenth

22  Amendment in the first amended complaint, Defendants' motion to dismiss "Denham's

23  Fourteenth Amendment claim" should be denied.

24                    **B.  Conspiracy**

25       Next, Defendants argue Plaintiff "attempts to allege a conspiracy cause of action under 42

26  U.S.C. §§ 1983 and 1988."[5] (Doc. 23 at 14.)  Defendants contend Plaintiff did not allege facts

27  ───────────────

28  [4] As noted earlier, Plaintiff mistakenly refers to this claim as his "Fifth Claim for Relief."

[5] The Court presumes the reference to section "1988" is a typographical error as Plaintiff's first amended

showing or suggesting a meeting of the minds to violate Plaintiff's Eighth Amendment rights. (*Id.* at 15.) Rather, they argue the claim in that regard is conclusory and should be dismissed. (*Id.*)

In opposition, Plaintiff contends the claim is sufficiently pled. (Doc. 58 at 3.) Specifically, Plaintiff states the first amended complaint alleges a meeting of the minds in paragraphs 52 through 54. (*Id.* at 4-5.) Further, Plaintiff contends that should this Court grant Defendants' motion as to this claim, his proposed second amended complaint "clarifies the conspiracy claim," citing to and quoting paragraphs 60 through 64 of the proposed second amended complaint. (*Id.* at 5-6.)

A Section 1983 conspiracy violation requires an agreement or meeting of the minds to violate a constitutional right, an overt act in furtherance of the conspiracy, and a constitutional violation. *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). The required agreement "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* Conspiracies to interfere with civil rights are made actionable under 42 U.S.C. § 1985. Section 1985 contains three subsections, but Plaintiff did not plead a specific subsection in his first amended complaint. The Court presumes Plaintiff alleges a violation of the third subsection.

To successfully bring a claim under § 1985, a plaintiff must allege and prove four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Brotherhood of Carpenters and Joiners of Am. V. Scott*, 463 U.S. 825, 828-29 (1983)). Additionally, the second element requires a plaintiff to identify a legally protected right and demonstrate a deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Griffith v.*

---

complaint refers to section "1985" rather than 1988.

*Breckenridge*, 403 U.S. 88, 102 (1971)). In interpreting these standards, the Ninth Circuit has

held that a § 1985 conspiracy claim must allege specific facts to support the allegation that

defendants conspired together. *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 626

(9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state

a claim under 42 U.S.C. § 1985. *Id.*; *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir.

1991).

A conspiracy occurs only when the parties have reached "a unity of purpose or a common

design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco

Co. v. United States*, 328 U.S. 781, 809-10 (1946).

As noted above, Plaintiff argues paragraphs 52 through 54 meet the "meeting of the

minds" requirement for a § 1985 claim. Those paragraphs read as follows:

> On January 21, 2020 Defendants Sherman and Cisneros noted that "the roof membrane replacement will be scheduled" at an unknown time. But declined Paul Denham's request to "please stop installing dangerous absorbent ceiling tiles in the dining hall." Despite Paul Denham's warning that 'the next rainfall will cause these tiles to deteriorate and fall into areas where prisoners walk + eat."
>
> Defendants Elszy, Perkins, and Cooper personally saw that the leaks from the dining hall roof damaged the ceiling tiles and caused them to fall into areas where prisoners walk and eat. Yet, instead of waiting for the roof to be replaced, and knowing that until it was replaced it would not prevent water intrusion, these defendants requested replacement of the fallen/damaged ceiling tiles, knowing these replacements would fall during rain.
>
> Defendants Brasil, Ronquillo, Davis, Martin, Maltman, and Milam were all aware that they could not install absorbent ceiling tiles into the dining hall until after the roof was replaced. Because replacement tiles would become rain damaged then fall into areas where prisoners eat and walk. Notwithstanding this knowledge, these defendants, all of them, installed absorbent ceiling tiles into the dining hall without first waiting for the roof to be replaced.

(Doc. 21 at 11-12.)

Here, Plaintiff alleges Defendants Sherman, Cisneros, Elszy, Perkins, Cooper, Brasil,

Ronquillo, Davis, Martin, Maltman and Milam conspired to replace ceiling tiles prior to the roof's

replacement despite their knowledge that those tiles are absorbent and when affected by rainfall

would fall onto areas occupied by inmates. Liberally construing Plaintiff's first amended

complaint, and affording him the benefit of doubt, Plaintiff has provided an insufficient factual foundation for his notion that the named Defendants *agreed* to continue subjecting Plaintiff to safety risks by replacing ceiling tiles in the dining hall despite knowing its roof membrane required replacement to prevent water intrusion and resulting damage, particularly where ceiling tiles had previously fallen after absorbing rain. These allegations do not establish any agreement or plan to deprive Plaintiff of his constitutional rights and are vague and conclusory. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir.1989) (affirming district court's dismissal under Fed. R. Civ. P. 12(b)(6) where plaintiff provided only conclusory allegations of conspiracy); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (vague claims that defendants were involved in a conspiracy to deprive plaintiff of his rights will not suffice); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937 (9th Cir. 2012) (noting conclusory conspiracy allegations are insufficient to provide notice to defendants). To the extent Defendants planned or agreed to do anything, all that can be reasonably inferred is that all agreed to interim ceiling tile repairs prior to a planned but not yet scheduled roof repair. Defendants' motion to dismiss as to should be granted.

Further, a review of Plaintiff's proposed second amended complaint, and paragraphs 60 through 64 (*see* Doc. 51 at 13-14), does not change the recommended outcome. The facts alleged do not establish a meeting of the minds or plan by the named Defendants to deprive Plaintiff of his rights.

In sum, Defendants' motion to dismiss Plaintiff's conspiracy claims should be granted. However, Plaintiff will be given leave to file an amended complaint. While Plaintiff has filed a motion for leave to file an amended complaint and has lodged a proposed second amended complaint, to avoid any confusion, this Court will recommend Plaintiff be granted leave to file a third amended complaint should this Court's recommendation be adopted by the assigned district judge.

### C.  Government Tort Claim & Equitable Tolling

Finally, Defendants contend Plaintiff's state law negligence claim must be dismissed because he did not file his complaint within six months of the rejection of his government tort claim. (Doc. 23 at 15.) They further contend Plaintiff is precluded from asserting a tolling defense

1   because he initiated court action more than six months after his inmate grievance or appeal was

2   denied. (*Id*.)

3       In opposition, Plaintiff maintains he is entitled to tolling following the July 9, 2019, denial

4   of his tort claim for the period his "tort claims against the Defendants were pending in federal

5   district court in an action filed therein in good faith 52 days after Defendants' rejection of the

6   claims." (Doc. 58 at 6.) More particularly, Plaintiff filed an action in this Court on August 29,

7   2019, titled *Denham v. Sherman, et al*., assigned No. 1:19-cv-001176-DAD-GSA (PC), "raising

8   his state claims." (*Id*. at 7.) Following screening of the amended complaint, the Court found

9   Plaintiff had failed to allege any cognizable federal claims and thus determined his state claims

10  also failed. (*Id*.) In response, Plaintiff filed a notice of voluntary dismissal, and the matter was

11  dismissed without prejudice on September 28, 2020. (*Id*.) Plaintiff contends that prior to that

12  action being dismissed, he filed the action in the state superior court on September 21, 2020. (*Id*.)

13  Plaintiff argues *Addison v. State*, 21 Cal.3d 313 (1978) supports his position. (*Id*.)

14                              ***Defendants' Timeline***

15      In relating the relevant timeline, Defendants argue Plaintiff submitted SATF-E-19-01152

16  to the prison on February 10, 2019, alleging the roof in the Facility E dining hall leaks when it

17  rains, had approximately fifty faulty or broken ceiling tiles and corroded roof framework,

18  exposing him to health and safety risks. (Doc. 23 at 15.) Plaintiff also claimed contaminated

19  water dripped onto him and his food or drink and that partial ceiling tiles had fallen near him

20  while in the dining hall, exposing him to risk of injury. (*Id*. at 15-16.) On June 17, 2019, Plaintiff

21  filed his government claim, No. 19005864, alleging water leaks in the Facility E dining hall roof

22  and water intrusion creating hazardous conditions in violation of his Eighth and Fourteenth

23  Amendment rights. (*Id*. at 16.) It also "alleges a respondeat superior claim, a conspiracy to violate

24  civil rights claim and that Defendants were negligent under California law to his health and

25  safety." (*Id*.) Defendants assert that on July 9, 2019, Plaintiff's government tort claim was

26  rejected and on August 19, 2019, grievance SATF-E-19-01152 was denied and exhausted at the

27  director's level. (*Id*.) On September 1, 2019, Plaintiff submitted grievance or appeal SATF-E-19-

28  05608, alleging SATF staff were conspiring to cover up the damage to the Facility E dining hall

1    caused by leaks. (*Id.*) SATF-E-19-05608 was denied and considered exhausted on April 30, 2020.

2    (*Id.*) Thereafter, on September 21, 2020, Plaintiff filed a civil complaint in the Sacramento

3    County Superior Court (*id.*) — that action was removed to this Court on November 13, 2020.

4          Defendants contend Plaintiff's government tort claim was rejected on July 9, 2019 and

5    SATF-E-19-01152 was denied on August 19, 2019, however, Plaintiff did not file his complaint

6    in the Sacramento County Superior Court until September 21, 2020, more than one year after his

7    claim was rejected. (Doc. 23 at 17.) Defendants maintain this is critical because Plaintiff was

8    required to file any complaint within six months. (*Id.*) Equitable tolling, while applicable, does

9    not assist Plaintiff, Defendants contend, because when SATF-E-19-01152 was denied on August

10   19, 2019, Plaintiff had until February 19, 2020 to file a complaint; because he did not do so until

11   September 21, 2020, his action is barred. (*Id.*) Further, Defendants argue SATF-E-19-05608

12   "cannot act to save his complaint from being untimely filed" because it concerns a conspiracy to

13   cover up damages and was filed almost two months after his government tort claim was rejected

14   and two weeks after SATF-E-19-01152 was denied. (*Id.*)

15        As noted above, Plaintiff argues an action filed in this Court on August 29, 2019 entitles

16   him to tolling of the six-month period following the rejection of his government tort claim. (Doc.

17   58 at 6-7.) Defendants did not file a reply to Plaintiff's opposition.

18                 *Analysis*

19       Plaintiff completed and signed a government claim form on June 17, 2019; it was received

20   on July 1, 2019. (Doc. 23, Ex. B at 40-42.) The claim was rejected on July 9, 2019. (Doc. 23, Ex.

21   C at 97-99.) Therefore, Plaintiff had six months—or until January 6, 2020[6]—within which to file

22   suit. Defendants argue Plaintiff did not file suit until September 21, 2020, when he filed the action

23   in the Sacramento County Superior Court, thus exceeding the applicable time limit for his state

24   law negligence claims. However, Plaintiff points to an action he filed in this Court on August 29,

25   2019, asserting he timely filed suit following the July 9, 2019 rejection of his government tort

26   claim. Plaintiff cites California Supreme Court authority in support of his position.

27

28   [6] July 9, 2019 + 180 days = Sunday, January 5, 2020.

1      This Court takes judicial notice of *Denham v. Sherman*, No. 1:19-cv-01176-DAD-GSA

2   (PC). *See Lee*, 250 F.3d at 690   A review of the docket in that action reveals Plaintiff filed a

3   complaint with this Court on August 29, 2019. (Docket, 1:19-cv-01176, Doc. 1.) On October 17,

4   2019, Magistrate Judge Gary S. Austin dismissed the complaint for a violation of Rule 8(a) and

5   granted Plaintiff leave to file a first amended complaint. (Docket, 1:19-cv-01176, Doc. 13.) In an

6   Order dated October 23, 2019, Judge Austin struck the first amended complaint and ordered

7   Plaintiff to file a "new" first amended complaint in compliance with his October 17, 2019 order.

8   (Docket, 1:19-cv-01176, Doc. 17.) Plaintiff filed a first amended complaint on November 18,

9   2019. (Docket, 1:19-cv-01176, Doc. 19.) The following day, Judge Austin issued an order

10   granting Plaintiff's motion to file a first amended complaint using the correct case number.

11   (Docket, 1:19-cv-01176, Doc. 20.) On August 31, 2020, Judge Austin issued an order dismissing

12   the first amended complaint for a failure to state claim and ordered a second amended complaint

13   be filed within 30 days. (Docket, 1:19-cv-01176, Doc. 34.) On September 28, 2020, Plaintiff filed

14   a notice of voluntary dismissed pursuant to Rule 41(a)(1)(A)(ii). (Docket, 1:19-cv-01176, Doc.

15   36.) On September 30, 2020, the action was voluntarily dismissed without prejudice and the case

16   was closed. (Docket, 1:19-cv-01176, Doc. 37.)

17      The question before this Court is whether Plaintiff is entitled to equitable tolling of the

18   statute of limitations applicable to his state law claims because while Plaintiff did not file his state

19   court action until well after the applicable six-month deadline had elapsed, he did file an earlier

20   action in this Court.

21      In *Addison v. State of California*, 21 Cal.3d 313 (1978), cited by Plaintiff to support his

22   opposition, the California Supreme Court held that the statute of limitations for filing a

23   governmental tort claim was equitably tolled when plaintiff initially filed his action in federal

24   court. The purpose of the doctrine, the court observed, "is to soften the harsh impact of technical

25   rules which might otherwise prevent a good faith litigant from having a day in court." *Id*. at 316.

26   Recognizing the principal goal of statutes of limitation as preventing the assertion of stale claims,

27   the court affirmed the "general policy which favors relieving plaintiff from the bar of a limitations

28   statute when, possessing several legal remedies he, reasonably and in good faith, pursues one

1    designed to lessen the extent of his injuries or damage." *Id*. at 317 (citations omitted).

2          The *Addison* court explicitly held that equitable tolling was available in actions against

3    public entities. *Id.* at 319. The plaintiffs in *Addison* originally filed a tort action against the State

4    of California and the County of Santa Clara in federal court, alleging violations of state and

5    federal law. *Id*. at 315-16. The federal district court dismissed the federal claims and declined to

6    exercise supplemental jurisdiction over the remaining state claims. *Id*. at 316. Plaintiffs then

7    refiled their claims in Santa Clara County Superior Court. *Id*. However, under the California Tort

8    Claims Act, a plaintiff must present a claim to the defendant agency within six months of the

9    accrual of the cause of action. Cal. Gov. Code § 911.2. Upon receiving notice that the agency has

10    denied the claim, the plaintiff then has six months to bring an action in court. *Id*. § 945.6. In

11    *Addison*, the plaintiffs filed their federal action within six months of receiving notice, but not their

12    subsequent state action. *Addison*, 21 Cal. 3d at 316. The superior court thus dismissed the action,

13    reasoning that it was barred by the statute of limitations. *Id*. In reversing the superior court, the

14    *Addison* court reasoned that it could "discern no reason of policy which would require plaintiffs

15    to file simultaneously two separate actions based upon the same facts in both state and federal

16    courts since 'duplicative proceedings are surely inefficient, awkward and laborious.'" *Id*. at 319.

17    Rather, where the three-pronged test for equitable tolling is met, policy favors tolling the statutory

18    period set out in the California Tort Claims Act during the pendency of litigation in another

19    forum. *Id*. at 321. The "application of the doctrine in equitable tolling requires timely notice, and

20    lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the

21    plaintiff." *Id.* at 319.

22          Here then, the Court considers the applicable test outlined in *Addison*.

23          The first element of equitable tolling is whether the defendants received timely notice of

24    the original claim. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). "This

25    filing must 'alert the defendant in the second claim of the need to begin investigating the facts

26    which form the basis for the second claim.'" *Calderon v. United States*, No. 1:17-cv-0040-BAM,

27    2018 WL 5906064, at *4 (E.D. Cal. Nov. 9, 2018) (citing *Daviton v. Columbia/HCA Healthcare

28    Corp.*, 241 F.3d 1131, 1138 (9th Cir. 2001) & *Collier v. City of Pasadena*, 142 Cal.App.3d 917,

1    924 (1983)).

2          The Court notes a review of the 47-page complaint filed in 19-01176 reveals it concerns

3    the same defendants and the same or similar claims as those asserted in this action concerning the

4    SATF Facility E dining hall. Significantly, the docket for 19-01176 reveals that action was

5    voluntarily dismissed prior to service upon any defendant.

6          Service of the summons and complaint upon any named defendant did not occur in 19-

7    01176. In the absence of service of the summons and complaint in 19-01176, defendants would

8    not have had timely notice of Plaintiff's original claim. The Court notes Defendant Sherman was

9    served with a copy of the complaint by mail on August 27, 2019. (*See* Docket, 1:19-cv-01176,

10   Doc. 1 at 46 [Proof of Service executed by Jeffrey Fredrick upon "Mr. Stu Sherman, Warden,

11   SATF Prison, 900 Quebec Avenue, Corcoran, California 93212"].) Nevertheless, that action—

12   mailing a copy of the complaint—is not the equivalent of Defendant Sherman having timely

13   notice of Plaintiff's original claim. No summons was issued, nor were service of process efforts

14   ordered by the Court. *See* Fed. R. Civ. P. 4(c)(1) (a summons must be served with a copy of the

15   complaint); *see also Consiglio v. Brown*, No. 1:16-cv-01268-AWI-SAB (PC), 2019 WL 2153138,

16   at *7 (E.D. Cal. May 17, 2019) (no timely notice of original claim where defendant was not

17   served before voluntary dismissal); *Rockefeller Technology Investments (Asia) II v. Changzhou

18   SinoType Technology Co., Ltd.*, 9 Cal.5th 125, 138 (2020) (*Rockefeller*) (from a defendant's

19   perspective, service of process provides notice of the pending action and gives him or her an

20   opportunity to present a defense; "[s]ervice of process ... protects a defendant's due process right

21   to defend against an action by providing constitutionally adequate notice of the court

22   proceeding").

23         Because Plaintiff cannot meet the first requirement of the *Addison* test, the Court does not

24   address prejudice to Defendants' preparation of its defense or whether Plaintiff acted in good

25   faith. *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (appellate court determined timely notice

26   of the claim and prejudice to defendant were not at issue, affirmed district court's finding that

27   plaintiff did not act reasonably and in good faith and thus "properly refused to equitably toll the

28   statute of limitations").

In conclusion, the Court finds Plaintiff is not entitled to equitable tolling as concerns his state law negligence claims against Defendants. Moreover, the Court finds granting leave to amend would be futile as to these claims. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile"). Therefore, Defendants' motion to dismiss Plaintiff's state law claims should be granted.

## VI.      MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff filed a motion for leave to file a second amended complaint on May 3, 2023. (Doc. 53.) Defendants opposed (Doc. 57) and Plaintiff replied (Doc. 61).

Considering the above, it will be recommended that Plaintiff be granted leave to file a third amended complaint as outlined in the findings above. Therefore, Plaintiff's motion to file a second amended complaint will be denied.

## VII.     MOTION FOR SANCTIONS

On April 10, 2023, Plaintiff filed a Motion for Sanctions Against Defendants' Attorneys for Bad Faith Delay of Litigation & Hampering of January 11, 2023 Court Order. (Doc. 44.) On May 1, 2023, Defendant filed an opposition to Plaintiff's motion. (Doc. 50.) Plaintiff filed a reply on May 10, 2023. (Doc. 54.)

Because the focus of Plaintiff's motion concerned his alleged inability to oppose Defendants' motion to dismiss,[7] which he has since opposed, and because the findings above resolve Defendants' motion to dismiss, this Court finds Plaintiff's motion for sanctions is effectively moot and hence will be denied. *See, e.g.*, *Heilman v. Wasko*, No. 2:12-cv-01966 JAM AC P, 2015 WL 1498885, at *4 (E.D. Cal. Mar. 31,2015) (because plaintiff's motion to compel was denied, his related request for sanction was also denied); *Cooper v. Heatley*, No. 2:12-cv-00602 KJM DAD P, 2015 WL 163002, at *5 (E.D. Cal. Jan. 7, 2015) (plaintiff's motion for sanctions for defense counsel's failure to provide receipts of all expenses claimed in defendants'

---

[7] See Doc. 44 at 2 (relief "calculated to (1) prevent further delay in responding to Defendants' motion to dismiss"), 4 ("Preventing plaintiff from responding to the motion to dismiss"), 11 [defense counsel "hampering enforcement of this Court's January 11, 2023 order requiring plaintiff to respond to Defendants' motion to dismiss"), 12 (same), 13 ("More importantly, relocating plaintiff's legal property is calculated to enable him to comply with this Court's order of January 11, 2023 requiring plaintiff to respond to Defendants' motion to dismiss").

1  motion for imposition of discovery sanctions denied because receipts of claimed expenses

2  subsequently provided to the court and found to be satisfactory); *Gregory v. Ramirez*, No. CIV S-

3  04-0764 FCD DAD P, 2008 WL 4534283, at *1 (E.D. Cal. Oct. 7, 2008) (because defense

4  counsel complied with the court's previous order to turn over all exhibits to be used at trial,

5  plaintiff's motion for sanctions was denied).

6      **VIII.   CONCLUSION AND RECOMMENDATIONS**

7      For the reasons given above, **IT IS HEREBY ORDERED** that:

8      1.  Plaintiff's motion for leave to file a second amended complaint (Doc. 53) is **DENIED**.

9      2.  Plaintiff's motion for sanctions (Doc. 44) is **DENIED**.

10      Further, **IT IS HEREBY RECOMMENDED** that:

11      1.  Defendants' Motion to Dismiss filed June 24, 2022 (Doc. 23) be **DENIED IN PART**

12          and **GRANTED IN PART**. Specifically, this Court RECOMMENDS:

13          a.  Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim be

14              **DENIED** because this action does not proceed on any Fourteenth Amendment

15              claim;

16          b.  Defendants' motion to dismiss Plaintiff's conspiracy claims be **GRANTED**

17              with leave to amend; and

18          c.  Defendants' motion to dismiss Plaintiff's state law negligence claims be

19              **GRANTED** without leave to amend.

20      Plaintiff should be ordered to file a third amended complaint within 30 days

21      assuming these findings are adopted by the assigned district judge.

22

23      These Findings and Recommendations will be submitted to the United States District

24  Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen**

25  **(14) days** after being served with these Findings and Recommendations, the parties may file

26  written objections with the Court. The document should be captioned, "Objections to Magistrate

27  Judge's Findings and Recommendations." The parties are advised that failure to file objections

28  within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772

F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:  __**September 8, 2023**__

_____

UNITED STATES MAGISTRATE JUDGE